UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERT F. BLECHINGER, ) | Civ. 11-4069-KES |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER GRANTING MOTION |
| ) | FOR SUMMARY JUDGMENT |
| SIOUX FALLS HOUSING AND ) | |
| REDEVELOPMENT COMMISSION, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Robert F. Blechinger, filed a pro se civil lawsuit against defendant, Sioux Falls Housing and Redevelopment Commission (Sioux Falls Housing). Blechinger alleges that Sioux Falls Housing failed to inspect his apartment from 1997 until 2009, resulting in his apartment being unable to meet the Housing Quality Standards established by the Department of Housing and Urban Development (HUD); that Sioux Falls Housing made false statements to HUD that he smoked in his apartment, and that Sioux Falls Housing has misrepresented its ability to allow him to maintain his housing subsidy while he attempts to clean his apartment and bring it into compliance with the Housing Quality Standards. Blechinger seeks an order compelling Sioux Falls Housing to immediately approve and begin paying his housing subsidy while he attempts to clean his apartment and bring it into compliance with Housing Quality Standards and an order compelling Sioux Falls Housing to pay the arrearages for his housing subsidy, which he estimates total $3,498.

Sioux Falls Housing moves for summary judgment on Blechinger's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. Blechinger has not responded to the motion for summary judgment and the time for doing so has passed.

## FACTS

Blechinger is a resident of Prospect Heights Apartments, located at 929 South Blaine Avenue, Sioux Falls, South Dakota.[1] He has resided there since September of 1997. Sioux Falls Housing is a public body established pursuant to SDCL Ch. 11-7.

When Blechinger first moved into the Prospect Heights Apartments in September of 1997, he was receiving housing assistance under the Rent Supplement Program, pursuant to § 221(d)(3) of the National Housing Act, codified at 12 U.S.C. § 17151(d)(3). At that time, the Rent Supplement Program was administered directly by HUD in conjunction with the owner of the Prospect Heights Apartments. Sioux Falls Housing's only duties under the Rent Supplement Program were to conduct "initial certification of new tenants including verification of income, rent computation and completion of all

---

[1] Because Blechinger did not provide a statement of material facts or respond to Sioux Falls Housing's statement of material facts, all the facts set forth in Sioux Falls Housing's statement of material facts are admitted. *See* D.S.D. Civ. LR 56.1D ("All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts."); Docket 18, Defendant's Statement of Material Facts.

required HUD forms and documents" and "annual and interim recertifications including all requirements of initial certification."

In August of 2009, Sioux Falls Housing learned that the owner of the Prospect Heights Apartments was opting out of the Rent Supplement Program and was selling the apartments to Kevin Vanpeursem. The sale was finalized in November of 2009. Because of the prior owner's decision to opt out of the Rent Supplement Program, Sioux Falls Housing learned that eligible residents of the Prospect Heights Apartments who had been receiving housing assistance prior to the opt out would continue receiving it in the form of Tenant Protection Vouchers, pursuant to 14 U.S.C. § 1437f.

The Voucher Program is administered by local public housing authorities, like Sioux Falls Housing. *See* 24 C.F.R. § 982.1. A tenant must satisfy the eligibility requirements set forth in 24 C.F.R. § 982.01 to participate in the Voucher Program. Once the public housing authority has determined that a tenant is eligible to participate in the Voucher Program, it must then determine whether the rental unit selected by the tenant satisfies the Housing Quality Standards set forth in 24 C.F.R. § 982.401. After the public housing authority has determined that the tenant is eligible and that the rental unit satisfies the Housing Quality Standards, it enters into a Housing Assistance Payment contract with the owner of the rental unit, whereby the public housing authority agrees to pay a portion of the eligible tenant's rent directly to the owner. *See* 24 C.F.R. § 982.305. Until a Housing Assistance Payment

contract has been executed, a public housing authority may not make any housing assistance payments to the owner of the rental unit. *See* 24 C.F.R. § 982.305(c)(2). Nor may a public housing authority enter into a Housing Assistance Payment contract until it has determined that the rental unit satisfies the Housing Quality Standards. *See* 24 C.F.R. § 982.305(a).

When Sioux Falls Housing learned that it would be administering the voucher program for residents of the Prospect Heights Apartments, it began inspecting the apartments to ensure that they satisfied the Housing Quality Standards. Blechinger's apartment was first inspected in August of 2009. During the inspection, significant clutter and debris, such as paper, food cartons, clothing, and other materials covered Blechinger's stove, obstructed many of his electrical outlets, and made it difficult to access various parts of his apartment, including his bathroom. Following the inspection, Sioux Falls Housing told Blechinger that his apartment did not satisfy Housing Quality Standards and that he would not receive rental assistance under the Voucher Program in his current apartment. Blechinger subsequently began a cleanup effort to bring his apartment into compliance. Sioux Falls Housing has made several follow-up visits to Blechinger's apartment since the August 2009 inspection to provide him with guidance on what needs to be done to satisfy Housing Quality Standards. On two separate occasions, Sioux Falls Housing employees noted cigarette butts inside Blechinger's apartment, leading them to believe that someone was smoking inside the apartment. When asked about

the cigarette butts, Blechinger said his girlfriend comes over and smokes. Due to the accumulation of clutter and debris in Blechinger's apartment, Sioux Falls Housing became concerned that someone smoking in Blechinger's apartment presented a serious fire hazard. Sioux Falls Housing communicated this concern to the Sioux Falls Field Office for HUD sometime in late 2009 or early 2010.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette*

5

*Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise show that a genuine issue exists. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

Rule 56 of the Federal Rules of Civil Procedure applies to pro se litigants, despite the liberal construction afforded to their pleadings. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522 (8th Cir. 1987). The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

## DISCUSSION

### I. Sioux Falls Housing Did Not Have a Duty to Inspect Blechinger's Apartment until August 2009.

Blechinger asserts that Sioux Falls Housing failed to inspect his apartment from September 1997 until August 2009. Blechinger argues that because of this failure to inspect his apartment, he is unable to satisfy the Housing Quality Standards established by HUD. Sioux Falls Housing contends that it was under no obligation to inspect his apartment during that time period.

Before August 2009, Blechinger received rental assistance under the Rent Supplement Program. This program was administered directly by HUD in conjunction with the owner of the Prospect Heights Apartments. Sioux Falls Housing's involvement was limited to the duties set forth in the Administrative

Agreement between it and the owner of the Prospect Heights Apartments. Under the Administrative Agreement, Sioux Falls Housing's sole responsibilities were "initial certification of new tenants" and "annual and interim recertifications" of tenants. The Administrative Agreement between Sioux Falls Housing and Prospect Heights Apartments specifically provides that the "Prospect Heights Apartments will be responsible for all other management and maintenance." *See* Docket 20, Affidavit of Shirreen Ranschau at ¶16. Thus, Sioux Falls Housing did not have a duty to inspect Blechinger's apartment under the Rent Supplement Program.

Rather, Sioux Fall Housing's duty to inspect arose in August 2009, when it learned that it would be responsible for administering the Voucher Program. Under the Voucher Program, a public housing authority, like Sioux Falls Housing, is required to inspect a rental unit and ensure that it satisfies the Housing Quality Standards set forth in 24 C.F.R. § 982.401, before it can enter into a Housing Assistance Program contract with the owner of the rental unit and begin making housing assistance payments. *See* 24 C.F.R. § 982.305(a)(2). The public housing authority must inspect the rental unit on a yearly basis to make sure that it continues to satisfy the Housing Quality Standards. *See* 24 C.F.R. § 982.405(a).

Blechinger does not appear to base his complaint upon these regulations. But even if the Voucher Program had been in place before August 2009, Blechinger would be unable to assert a claim against Sioux Falls Housing for its

failure to inspect. The regulations specifically provide that no private cause of action exists.

> Part 982 does not create any right of the family, or any party other than HUD or the [housing association], to require enforcement of the HQS requirements by HUD or the [housing association], or to assert any claim against HUD or the [housing association], for damages, injunction or other relief, for alleged failure to enforce the HQS.

24 C.F.R. § 982.406. Thus, while the Voucher Program requires the public housing authority to inspect a rental unit to ensure that it meets Housing Quality Standards, it does not permit an individual or family or other third party to sue HUD or the public housing authority. As a result, Sioux Falls Housing is entitled to summary judgment on Blechinger's claim that Sioux Falls Housing's failure to inspect his apartment caused Blechinger to lose his housing subsidy payments.

**II.     Sioux Falls Housing Cannot Approve Blechinger's Participation in the Voucher Program Until His Apartment Satisfies Housing Quality Standards.**

Blechinger claims Sioux Falls Housing "mispresented" its ability to allow him to maintain his housing subsidy while he attempted to bring his apartment into compliance with Housing Quality Standards. Sioux Falls Housing asserts that the regulations governing the Voucher Program prevent it from approving Blechinger's participation in the program until his apartment is in compliance with Housing Quality Standards. Although Blechinger claims Sioux Falls Housing misrepresented that he would be able to continue receiving his housing assistance payments during the cleanup effort, he concedes that Sioux Falls

Housing told him that it "could not waive federal regulations" when it denied his request that his participation in the program be provisionally approved.

Sioux Falls Housing is required to comply with the regulations governing the Voucher Program. *See* 24 C.F.R. § 982.52 ("The PHA *must* comply with HUD regulations and other HUD requirements for the program.") (emphasis added). The first step in the process is determining whether the individual satisfies the eligibility requirements for participation in the Voucher Program, set forth at 24 C.F.R. § 982.201. Sioux Falls Housing does not dispute that Blechinger satisfies these requirements.

But the second step of the process is to determine whether the rental unit selected by the tenant satisfies the Housing Quality Standards set forth at 24 C.F.R. § 982.401. "All program housing must meet the HQS performance requirements both at commencement of assisted occupancy and throughout the assisted tenancy." *Id.* at § 982.401(a)(3). One requirement is that "[t]he dwelling unit and its equipment must be in sanitary condition." *Id.* at § 982.401(m). During its initial inspection of Blechinger's apartment, Sioux Falls Housing noted significant clutter and debris, such as paper, food cartons, clothing, and other materials covering Blechinger's stove, obstructing many of his electrical outlets, and making it difficult to access various parts of his apartment, including his bathroom. Consequently, Sioux Falls Housing concluded that the apartment did not comply with the Housing Quality Standards and informed Blechinger that it would not be able to provide him assistance with the Voucher

Program in his current apartment. Sioux Falls Housing concedes that Blechinger has engaged in a cleanup effort, but subsequent visits to his apartment have revealed that further work is needed to bring his apartment up to the standards required by HUD. Because Blechinger's apartment is not sanitary, Sioux Falls Housing had no option but to deny his participation in the Voucher Program. Section 982.305(a) provides that "[t]he PHA may not give approval for the family of the assisted tenancy, or execute a HAP contract, until the PHA has determined that all the following meet program requirements . . . [t]he unit has been inspected by the PHA and passes HQS." Regulations further provide that "[t]he PHA must not pay any housing assistance payment to the owner [of the rental unit] until the HAP contract has been executed." Thus, Sioux Falls Housing cannot make any payments on behalf of Blechinger until it has entered into a Housing Assistance Program contract with the owner of the Prospect Heights Apartments, but it may not enter into a contract with the owner until Blechinger's apartment satisfies the Housing Quality Standards established by HUD. Because Blechinger's apartment does not comply with Housing Quality Standards, Sioux Falls Housing was required to deny his request that his participation in the program be provisionally approved during the cleanup effort. Sioux Falls Housing is, accordingly, entitled to summary judgment on Blechinger's claim.

### III. The Allegedly False Statements Sioux Falls Housing Made to HUD Are Not Actionable.

Blechinger's final claim is that Sioux Falls Housing "misrepresented" to HUD that someone was smoking in his apartment. Sioux Falls Housing asserts that on two separate occasions, Sioux Falls Housing employees noticed cigarette butts in Blechinger's apartment, leading them to believe someone was smoking inside the apartment. When asked about the cigarette butts, Blechinger said his girlfriend comes over and smokes. Sioux Falls Housing became concerned that someone smoking in Blechinger's apartment presented a serious fire hazard due to the cluttered conditions in Blechinger's apartment. Sioux Falls Housing reported this concern to the Sioux Falls Field Office for HUD in late 2009 or early 2010.

Blechinger argues that Sioux Falls Housing's statements "may constitute a violation of 18 U.S.C. § 1001," which provides that:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully–
>
> > (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> > (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> > (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry,
>
> shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism . . . , imprisoned not more than 8 years or both . . . .

11

18 U.S.C. § 1001(a). Even assuming that the statute applies to the present case, Blechinger has failed to allege that Sioux Falls Housing "knowingly and willfully" made a "materially false, fictitious, or fraudulent statement or representation." The statements were based on observations employees of Sioux Falls Housing made while inspecting Blechinger's apartment and were communicated to HUD out of concern for Blechinger's safety. Thus, Blechinger cannot satisfy the elements of 18 U.S.C. § 1001 and defendants are entitled to summary judgment. *See United States v. Lange*, 528 F.2d 1280, 1287 n.10 (5th Cir. 1976) ("It is clear that the word 'false' as used in § 1001 must mean more than simply incorrect or untrue. An intent to deceive or mislead is required under the act[.]"). (internal citations omitted).

It also appears that Blechinger may be attempting to assert a state-law claim for slander. Under South Dakota law,

> Slander is a *false* and unprivileged publication, other than libel, which:
>
>> (1) charges any person with crime, or with having been indicted, convicted, or punished for crime;
>> (2) imputes to him the present existence of an infectious, contagious, or loathsome disease
>> (3) tends to directly injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit;
>> (4) imputes to him impotence or want of chastity; or
>> (5) by its natural consequences, causes actual damage.

SDCL 20-11-4 (emphasis added). Given this language, Blechinger faces the same difficulty proving a slander claim that he would under 18 U.S.C. § 1001. That is, Blechinger is unable to produce evidence that the statements Sioux Falls Housing made to HUD were false. The observations made by Sioux Falls Housing indicated that someone was smoking inside his apartment. Accordingly, Blechinger cannot satisfy the elements of slander. *See Guilford v. Northwestern Public Servs.*, 581 N.W.2d 178, 180 (S.D. 1998) (holding that "truthful statements clearly do not amount to slander."). Thus, Sioux Falls Housing is entitled to summary judgment. Therefore, it is

ORDERED that Sioux Falls Housing's motion for summary judgment (Docket 17) is granted.

IT IS FURTHER ORDERED that Blechinger's motion to consolidate cases (Docket 23) is denied as moot.

Dated November 29, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE